MARS v. VIRGINIA HOME INSURANCE COMPANY.

1. In an action on a policy of fire insurance issued by a Virginia company, the Circuit judge refused to admit in evidence a certified copy of proceedings in the courts of Virginia which showed that this debt had been attached in the hands of this defendant under an attachment there issued against this plaintiff. *Held* that this refusal was error.

2. The admissions by a local agent of the defendant company of the principal's liability to pay the loss were improperly received in evidence, it not having been made to appear that the local agent was authorized to adjust losses or had other powers that would make such admissions binding on his principal. And they were no part of the *res gestæ.*

3. The declarations of a third person concerning a box left with him by plaintiff just before the fire was clearly hearsay evidence, and therefore inadmissible.

4. Where fraud is relied on in defence, it is incumbent on the defendant to show it, although the complaint alleged that there was no fraud.

---

Before ALDRICH, J., Abbeville, February, 1882.

Action by W. W. Mars against the Virginia Home Insurance Company, commenced July 2d, 1881. The complaint among other things, alleged that the fire "did not happen by any fraud, evil practice, or neglect of the plaintiff, or in any way excepted in the condition of said policy."

Besides proof of the .fire, value of the house, stock, etc., plaintiff testified that a few days after the fire he submitted his affidavit of loss to W. T. Branch, the local agent of the company, to be sent on to the company; that soon afterwards Branch went to the place to adjust the losses, and required copy of the invoices, which were procured; that Branch afterwards gave plaintiff a blank to be filled, which was filled up particularly by detail and items, verified and delivered to Branch, who promised to deliver to the company; and that Branch told him several times that the loss would be paid. Two of plaintiff's brothers testified to the same effect. On the part of the defendant, W. T. Branch, the local agent of the company, testified that within a few days after the fire plaintiff brought up and handed him affidavits in relation to the loss, but that he told him they were not sufficient proofs; that he sent them on to the company right away; that he went down to plaintiff's to adjust the loss for the company; that he never told plaintiff or E. A. Mars the company would pay the loss.

Defendant then proved by J. W. Morrah that he saw at J. E. Caldwell's house a box, and offered to prove that J. E. Caldwell, who lived some distance from plaintiff, told him something about the box, plaintiff not being present, which he had in his possession just before the fire. Plaintiff objected, and the presiding Judge rejected the declaration on the ground that it was hearsay.

Defendant also offered in evidence an exemplification of the proceedings in the Circuit Court of Richmond, Virginia, Upon objection made by the plaintiff, the presiding Judge ruled it out.

The brief thus states the Judge's rulings:

"The presiding Judge held upon the argument of the law, that, if the plaintiff made and delivered to the defendant company through its agent the proof of loss which he said he

made, it was sufficient, and that the plaintiff could only be required to make such proof as would be reasonable, and could not be held to be in default only because the agent of the company said it was not satisfactory to them. Defendant objected to the admission in evidence of W. T. Branch's declarations as to what the company intended to do about paying the loss, but the presiding Judge overruled the objection.

On the question of fraud, the presiding Judge charged the jury that the complaint alleged that the fire occurred without fraud, negligence, or evil practice on the part of the plaintiff; that it was often difficult, sometimes impossible, to prove a negative; that it was incumbent on the plaintiff to make proof of the facts and circumstances of the burning; and that, having done that, unless it appeared from the evidence offered by the plaintiff that there was fraud, the burthen was shifted on the defendant company, and it was incumbent on them to prove that there was fraud on the part of plaintiff. His Honor charged the jury that, if they found the plaintiff was entitled to a verdict, they should add to the amount so found interest thereon from date of the burning of plaintiff's storehouse."

The jury, in accordance with this instruction, having allowed the plaintiff interest on his claim from the 3d day of January, 1881, the date of the burning of the plaintiff's storehouse, rendered a verdict for the plaintiff for the amount claimed with interest thereon from the date of the fire, being the sum of $2265.37. When the plaintiff came to enter up his judgment, he entered a remittitur for the sum of $27.56, being the interest allowed by the jury from January 3d, 1881, the date of the fire, to March 10th, 1881; this was done without defendant's consent.

The defendant appealed on the following exceptions:

1. Because his Honor refused to allow the defendant to introduce in evidence a properly certified copy of the proceedings of D. O'Neill & Sons against W. W. Mars, attaching in the hands of this defendant whatever amount of money the said defendant was due this plaintiff, said proceedings being a record in the Circuit Court of the city of Richmond, State of Virginia, a Court having full legal jurisdiction of said proceedings.

2. Because his Honor ruled that it was incumbent on the defendant to show fraud, although the plaintiff's complaint alleged that there was no fraud.

3. Because his Honor ruled that proofs of loss were served by plaintiff more than sixty days before the commencement of plaintiff's action herein, although no evidence was introduced as to the contents of said alleged proofs.

4. Because his Honor allowed plaintiff to introduce evidence that W. T. Branch, after the fire, said that the company would pay W. W. Mars, whether the said W. W. Mars paid his debts or not.

5. Because his Honor charged the jury that if they found that the plaintiff was entitled to a verdict, they should add to the amount so found interest thereon from the date of the burning of plaintiff's storehouse; the jury, in accordance with this instruction, having allowed the plaintiff interest on his claim from the 3d day of January, 1881, the date of the burning of plaintiff's storehouse.

6. Because his Honor refused to allow the defendant to introduce in evidence declaration of J. E. Caldwell that the boxes of goods in his possession just before the fire belonged to W. W. Mars, plaintiff aforesaid.

7. Because the rulings and charge of his Honor were in all other respects contrary to law.

Mr. *Eugene B. Gary*, for appellant.

Mr. *Ellis G. Graydon*, contra.

July 31, 1882.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE SIMPSON.—This action is against the defendant, a corporation under the laws of Virginia, upon a policy which covered a house and a stock of merchandise of plaintiff, located in Abbeville County, afterwards consumed by fire.   Among other defences, the answer set up the fact that the defendant had been garnisheed in the State of Virginia, under attachment proceedings, by a creditor of the plaintiff, a citizen of Charleston, to the amount of $340, and that this

proceeding was pending in Virginia. To sustain this defence, the defendant offered as evidence a certified copy of the proceedings in the Circuit Court of the City of Richmond, a court of record, to which plaintiff had been made a party. This evidence was ruled out by the presiding judge.

In the course of the trial, the declarations of W. T. Branch, a local agent of the defendant, made after the fire, to the effect that the company would pay for the loss, were received in behalf of the plaintiff against the objections of the defendant. There were other objections not necessary now to mention. The verdict was for the plaintiff for $2265.37.

We think there was error in the rulings of the Circuit Judge upon the two matters above referred to. Mr. Drake says "That the operation of an attachment against a garnishee is compulsory. He has no choice but to pay obedience to the judgment of the court to whose jurisdiction he has been subjected, and the exercise of that jurisdiction effects a confiscation, for the plaintiff's benefit, of the debt due from the garnishee to the defendant. In this proceeding it is an invariable rule that the garnishee shall not be prejudiced, or placed in any worse situation than he would have been in if he had not been subjected to garnishment. That is, if obliged, as garnishee, to pay to the plaintiff the debt he owed to the defendant, he shall not be compelled again to pay the same debt to the defendant. When, therefore, he is sued for that debt either before or after he has been summoned as garnishee, he must be allowed to show that he has been, or is about to be, made liable to pay, or has paid, the debt under an attachment against the defendant in which he has been charged as garnishee." *Drake*, § 700.

He then proceeds to show to what extent this defence will avail the defendant, and how he may take advantage of it both when the garnishment is prior to or pending the suit brought by the defendant in the attachment against the garnishee for the debt, and also after judgment rendered against the garnishee. The substance of which is, that while the garnishment is pending, it will operate at least as a "continuance, or suspension of the action, or if judgment be rendered, a stay of

execution, which can be removed afterwards, or made perpetual in whole or in part, as the exigency of the case may require. Where the action is brought after judgment rendered against a garnishee, the Court pronouncing the judgment having jurisdiction of the action and of the person of the garnishee, such judgment is conclusive against parties and privies, and constitutes a complete defence to any subsequent action by the defendant against the garnishee, for the amount which the latter was compelled to pay, and this, though the Court be a foreign tribunal." *Drake,* § 700 *et seq.,* and numerous cases referred to in the notes. *Campbell* v. *Home Insurance Co.,* 1 *S. C.* 158.

These principles are founded in good sense, and have been adopted in many of our sister States in the administration of their attachment laws, and we think they should have been applied and enforced here. The defendant proposed to prove by a certified copy of the proceeding in a court of record of the State of Virginia the pendency of the garnishment against them in that State. What effect this testimony would have had, whether causing a continuance, or judgment with a stay of execution, or whether the court in Virginia had acquired jurisdiction, we cannot now say. All this would have been for the Circuit Judge to consider, at his sound discretion. But we think the testimony was competent, and should have been received.

Next, as to the declarations of Branch. Branch, it seems, was a local agent of the defendant. His declarations were admitted, we suppose, upon the ground, that being agent, they were in law the admissions of his principal. The correctness of this ruling must depend upon the fact whether the admissions were in reference to a matter within the scope of his agency. It is well established that an agent can bind his principal within the limit of his agency as fully as the principal could himself, and no doubt the declarations and admissions of the agent within that limit would also be binding. But the agent is powerless outside of his agency. He is as complete a stranger as any one else, as to all matters except such as have been entrusted to his care and authority.

Now, was Branch an agent entrusted with such full powers as to be authorized to admit the liability of the defendant for the losses incurred by the plaintiff in advance of any action by the defendant itself? There was no testimony before the Court, as appears from the brief, as to the character of Branch's agency. It is simply stated that he was the local agent of the defendant. Where the declarations of an agent are offered and objected to, the first step required to make them competent is to prove the agency, and to show that in its legitimate scope it embraces the very matter about which the agent proposes to speak.

No one can be presumed to be the agent of another in the absence of all testimony. Nor can the limit of an agency be determined without some evidence as to the subject-matter over which the agent has charge. It is the duty of a party relying upon declarations and admissions of an agent to furnish this information to the Court before asking that they shall be heard. We do not think that the declarations of Branch were competent in reference to all matters of interest to the defendant simply because it was understood that he was the local agent of the company.

The policy stipulated that payment for losses should be made sixty days after proofs required by the company " shall have been received *at the office of the company in Richmond, Va.*, and the loss shall have been satisfactorily ascertained and proved," as required by its terms. There is nothing in the policy charging Branch with the duty of ascertaining and determining when the company should be liable. It does speak of certain facts which must be furnished to the company, or its adjusting agent, but it does not appear what the powers of an adjusting agent were, nor whether Mr. Branch occupied that position. Mr. Branch may have been simply an agent to insure and to pay in case of loss. This would not necessarily carry the power to admit liability. He is incidentally referred to by some of the witnesses as an adjusting agent, but the testimony on the subject does not seem to have been direct and express, and besides is quite meagre. These declarations were not admissible on the ground that they were part of the *res*

*gestœ. Patterson* v. *Railroad Co.*, 4 *S. C.* 154; *Aiken* v. *Telegraph Co.*, 5 *S. C.* 369.

We see no error in the exclusion of the declarations of J. E. Caldwell. He was no party to the action, nor had he any interest therein. He was a competent witness, and might have been put upon the stand to prove the facts referred to in his proposed declarations. The admissions of the declarations of this party would have been in direct conflict with the rule in reference to hearsay, and they constituted no part of the *res gestœ.* See the cases *supra.*

Nor do we think that the rulings of the Circuit Judge as to the question of fraud were erroneous. If fraud was involved in the case at all, it constituted a matter of defence and was no part of the cause of action.

The error assigned as to the sixty days involved a question of fact, and it does not appear that the finding of the jury on that subject is without testimony.

It is the judgment of this Court that the judgment of the Circuit Court be reversed on the two first grounds mentioned above, and that the case be remanded for a new trial.