8278

NELSON v. CHARLESTON & WESTERN CAROLINA RAILWAY.

1. OPINION EVIDENCE.—A witness may give his opinion about the speed of a train without giving the facts upon which the opinion is based.

2. ATTORNEYS.—THE PRESUMPTION that an attorney of acknowledged ability would not ask a clearly incompetent question, cannot prevail against the record.

3. PRINCIPAL AND AGENT—EVIDENCE.—The statements of a conductor the next day after the wreck in conversation with a passenger from whom he was seeking a statement of the facts of the accident are binding on the carrier.

   MR. JUSTICE WOODS *dissents, but thinks under all the evidence the error was cured.*

4. CHARGE—CARRIER—PASSENGER.—Where a party has asked the Court to give an erroneous instruction, he cannot complain if it is given. A passenger must show he was injured by some agency or instrumentality of the carrier to entitle him to recover.

   MR. JUSTICE WOODS *thinks the instruction given construed with its connections complied with this rule.*

5. CARRIER—PASSENGER—NEGLIGENCE.—Injury in a wreck is injury to a passenger by an instrumentality or agency of the carrier.

6. IBID.—IBID.—The first duty of a train crew in case of a wreck is to the passengers, and a conductor failing in this and to stop on signal and take up one whom he knew as a passenger on his train when wrecked and whom he had promised to take on when he overtook him, subjects the carrier to punitive damages.

   MR. JUSTICE WOODS *thinks this doctrine is stated too broadly.*

7. IBID.—IBID.—DAMAGES.—A TRAVELING SALESMAN can only recover as actual damages for pecuniary loss caused by a wreck such items as he can prove he has lost in money.

8. RAILROADS—NEGLIGENCE.—AN INSTRUCTION submitting to a jury whether running a train at a certain speed under certain circumstances was negligent, is not error.

9. APPEAL—VERDICT.—This Court cannot consider if a verdict is excessive.

Before WILSON, J., Spartanburg, April term, 1911. Affirmed.

Action by J. D. Nelson against Charleston & Western Carolina Ry. Co. Defendant appeals, on the following exceptions:

"The defendant excepts to the rulings and charge of his Honor upon the following grounds:

1st. "Error in admitting the statement of Mrs. R. M. DuBose as contained in her deposition, over the objection of counsel, as follows: 'A few minutes before the wreck I noticed the train was running pretty fast, faster than I thought it ought to go,' said evidence being incompetent, it being the expression of the opinion of the said witness as to how fast she thought the train ought to go and there being no proper foundation laid for such opinion, the witness not being shown to be an expert.

2d. "Error in admitting, over objection of counsel, the testimony of Mrs. R. M. DuBose as contained in her deposition as follows: 'This train very often run too fast for a mixed train,' the said evidence being the mere expression of an opinion of a nonexpert witness and referring, not to the occasion of the wreck in question, but to other times and places, and the same being therefore incompetent. Error further in holding that the defendant could not take advantage of the incompetency of said statement, on account of the fact that it was made in connection with the cross-examination of said witness by Mr. Cooper, when he should have held that under the agreement of counsel at the taking of said deposition, the right to object to any and all testi-

mony was specifically reserved and therefore the defendant had a perfect right to object to said testimony at the trial.

3d. "Error in refusing upon motion of defendant's attorneys to strike from the deposition of W. M. Hines the following: 'It was behind time and was trying to make up for lost time. I noticed sometime before the wreck that it was running too fast. I had noticed it was running too fast for four or five miles before the wreck,' the error being that said statements are the expression of the mere nonexpert opinion of the witness without giving the facts upon which same were based and were therefore incompetent.

4th. "Error in allowing the plaintiff to tell what Captain Little, the conductor, said to him on the day following the wreck, said testimony occurring as follows:

" 'Did you ever hear Captain Little say where they went? Mr. Grier: We object to what Captain Little said about where they went. It is not *res gestae* and does not throw any light upon this accident at all. Court: You know that it went to Gray Court? Witness: I believe Captain Little would be truthful about it. Court: You know it went to Gray Court? Witness: Only what I was told. Court: Strike that out, Mr. Stenographer. Now, who told you about the train, where the train went? Captain Little. Mr. Nash: Here is the conductor of that train, your Honor. Court: I think he can state, Mr. Grier. Mr. Grier: I want this put down that it is incompetent and irrelevant, not *res gestae,* and does not throw any light on this matter. Where did Captain Little tell you they first went? He told me on the next day— Mr. Grier: We submit that the conversation the next day isn't competent. Court: Was he still in your employ? Mr. Grier: Yes, sir; he is now, as far as that is concerned. Court: Was he the conductor on the train that night? Witness: Yes, sir. Court: I think so. Mr. Grier: We object on the ground that it is not *res gestae* and of course that is the only way they could say that it would come in. Where did Captain Little tell you the next

day that the train went that night?   He said it went to
Gray Court from Owens, and the second trip it came from
there to Laurens, carrying some live stock and negroes, leav-
ing the white folks up in the woods, now that is the way he
did.   Did the train come back?   Mr. Grier: He said that
is what Captain Little told him, that they carried some live
stock and negroes, and left the white people up in the
woods.   Is that what Captain Little told you?   Why, cer-
tainly.   Mr. Grier: We move to strike that out, that it in
nowise bears on this case, wholly incompetent and throws
no light upon this question.'

"The error being that the said testimony as to what the
witness was told by Captain Little was incompetent; it was
not shown to be within the scope of the authority of the
conductor; was not part of the *res gestae* and should have
been excluded.

5th. "Error in allowing the plaintiff, over the objection
of the defendant, to testify as follows:

" 'Did you see Captain Little the next day after this
wreck?   Yes, sir.   Tell how it came about?   Where did
you see him?   I went to the ticket office to get a ticket to
Spartanburg.   Did he present a paper and ask you to sign
it?   He certainly did, and I refused.   Did Captain Little
have any conversation with you about this wreck the next
day?   Yes, sir; he handed me a paper to sign.   Did you
read the paper?   I refused to read the paper, and told him
that I had written to the railroad authorities.'

"The error being that the said testimony was incompe-
tent, relating as it did to an occurrence the next day after
the wreck; was not shown to be within the scope of the
authority of the conductor; was not a part of the *res gestae*
and should have been excluded.

6th. "Error in charging in connection with plaintiff's
third request as follows: 'I charge you that; now that means
this, gentlemen of the jury, that where a passenger is on a
railroad train and gets hurt and it is shown that he is hurt

on the railroad train, then the presumption is that it was done through the negligence of the railroad company, but when the railroad company shows that it was not through its negligence but something that it couldn't help, not held under the law as being negligent, then that presumption of negligence gives away, done away with,' the error being that in so charging, his Honor placed too great a burden upon the railway company and stated an erroneous proposition in telling the jury that *'where a passenger is on a railroad train and gets hurt and it is shown that he is hurt on the railroad train, then the presumption is that it was done through the negligence of the railroad company,'* when there is no presumption of negligence from the mere fact that a passenger is hurt on a railroad train. The error consisted further in charging the jury in that connection, in effect, that the mere fact of an injury to a passenger on a railroad train placed the burden upon the railroad company to show that it was not done through its negligence, but was done by something it couldn't help, the same being an erroneous statement of the law and placing too great a burden upon the company. The error consists further in the fact that in so charging in the face of the proposition laid down in the plaintiff's third request his Honor confused the jury, in that, in the first instance, he charged them that the presumption of negligence arises when a passenger has been injured *by any agency or instrumentality* of the railroad, whereas, in the second instance he charged them that it was only necessary to show that the passenger was injured *on the railroad train.*

7th. "His Honor erred in charging the jury as follows, the same being the plaintiff's fourth request: 'If an engineer wilfully or intentionally fails or refuses to see a passenger at a flag station, the passenger may recover punitive damages. Also if a conductor promises to hold the train and does not,' the error being that said proposition, as applied to the facts in this case, was erroneous and misleading to the jury, in that, under plaintiff's complaint and proof, the

defendant's agents were not under any obligation to stop and pick up the plaintiff unless they took the box cars that were then in the wreck, or some of them on to Laurens that night. If, therefore, they did not carry said box cars on to Laurens that night, as they claim they did not, the defendant would not be liable for punitive damages, even though the engineer did wilfully or intentionally fail or refuse to see the plaintiff at the flag station, the error being, further, that in so charging, his Honor told the jury in effect that regardless of what the facts might be as to whether said cars were carried on to Laurens that night, the defendant would be liable in punitive damages if the engineer wilfully or intentionally failed or refused to see the plaintiff, The error consists further in the fact that it is not always and under all circumstances a ground for punitive damages for an engineer to wilfully or intentionally fail to see a passenger at a flag station, and it was confusing and misleading to the jury for his Honor to charge said proposition in connection with the facts of this case.

8th. "Error in refusing to charge the defendant's first request, as follows: 'The jury are instructed that they cannot consider the question of punitive or vindictive damages in this case. The evidence is insufficient to warrant the finding of vindictive or punitive damages,' the error being that there was no evidence or no sufficient evidence upon which to base a verdict for punitive damages, and his Honor should have so charged.

9th. "Error in refusing to grant a new trial upon the defendant's third ground of motion for new trial, as follows: 'That his Honor erred in admitting the testimony of plaintiff detailing conversations he claims to have had with the conductor of the defendant on the day after the accident and alleged declarations made by said conductor; such declarations and conversations being hearsay and not part of the *res gestae,*' the error being that the admission of said testimony was incompetent upon the grounds stated in said

grounds for new trial and it was error of law not to grant the same.

10th. "Error in charging the jury the third request of the plaintiff, as follows: 'A wreck is not one of the inconveniences and risks which a passenger on a mixed train assumed and when it is shown that a passenger was injured by that cause, it is a natural and reasonable inference that the injury was the result of the negligence of the railroad company,' the error being that in so instructing the jury, the presiding Judge charged on the facts of the case in violation of article V, section 26, of the Constitution of 1895, thereby telling the jury what facts would constitute negligence and what facts would tend to prove negligence.

11th. "Error in charging the jury plaintiff's twelfth request, as follows: 'If a railroad runs a train of cars along a road at such a rate of speed as to be wanton and reckless and a passenger is injured thereby, the jury may infer a reckless and wanton disregard of the passenger's rights and award punitive damages. The jury must say under the evidence, whether the train, under the circumstances, was run at a reckless and wanton speed,' and in adding thereto the following: 'I charge you that. If you run a train at one time under certain circumstances at such a speed you might not be negligent, might not be reckless conduct, might not be wanton conduct; if you run a train at another time at the same place under different circumstances, might be in the opinion of the jury wanton and reckless conduct, they are to be the judges of the circumstances, what kind of a train or like that, what were the circumstances under which the train was running, what kind of a road, what time of day, what kind of weather, all these things come into consideration and it may come into consideration.'

"The error being that in so charging, his Honor charged the jury that it might infer recklessness from the fast running of the train; it being submitted:

"(1) That on a straight track, free from defects, fast running is not even evidence of negligence.

"(2) The request must be considered with reference to the evidence in so far as fast running and in so far as the condition of the track is concerned, and so considered, permits the jury to give punitive damages in a case, should they consider the rate of speed at which this particular train was running to be wanton or reckless. It, in effect, allows punitive damages to be awarded by the jury in this case on account of the rate of speed at which this particular train was running and is, therefore, error.

"(3) It leaves to the jury the right to decide whether, under the evidence of this case and the circumstances, the train was running at a reckless and wanton speed, whereas, it is submitted, as a matter of fact that the rate of speed at which this particular train was running, in the circumstances as disclosed by the record, was free from any charge of wantonness or wilfulness, and as a matter of law, did not constitute wantonness or wilfulness; in fact, did not constitute simple negligence, and it was error in the Court to permit the jury to infer from this, wantonness or wilfulness.

"(4) It submitted to the jury as a matter of fact, the question upon which there was absolutely no testimony whatever, to wit: there was no testimony tending to establish that the running of this train in the circumstances as disclosed by the record, was wanton or wilful.

"(5) It is submitted that the kind of train, the time of day and the kind of weather cannot be considered by the jury in determining whether the defendant was guilty of wantonness or wilfulness, and it was error to submit these considerations in determining this question.

12th. "Error in refusing to charge as submitted the defendant's tenth request, which was as follows: 'There is no statute law in this State regulating the speed at which a train shall be run, and the mere fast running of a train

is not negligence *per se* and cannot of itself be held to be wilful,' and in adding thereto: 'That is for the jury to say in each case whether under the circumstances, whether the train running at a certain speed under certain circumstances, was negligent running or not. You are to be judges of that particular case.' The error being:

"(a) That said request contained a sound proposition of law, applicable to this case, and should have been charged without modification.

"(b) It is submitted that the mere fast running of a train is not negligence *per se* and can never be made the basis of wilfulness, and his Honor erred in so instructing the jury and further erred in charging the jury that it was for them to say in each case whether in the circumstances a train running at a certain speed was negligent running and in not specifically instructing the jury, as requested, that it could not be made the basis of a charge of wilfulness.

13th. "Error in refusing to grant defendant's motion for a new trial upon defendant's second ground, which was as follows: 'Upon the ground that there was not sufficient evidence upon which to base a verdict for punitive damages,' the error being that the question of punitive damages was submitted to the jury and that there was no evidence in the record to sustain the same, and it further appearing from the verdict of the jury that the jury did include punitive damages.

14th. "Error in refusing to charge the defendant's third request, which was as follows: 'I charge you that plaintiff is not entitled to recover for loss of commissions in his business,' the error being that there is no evidence in the record showing that the plaintiff is entitled to recover commissions or profits and the verdict of the jury shows that it is partially made up, either of commissions or profits or vindictive or punitive damages, and in either view the question of commissions should not have been left to the jury, and the verdict was therefore erroneous.

15th. "Error in refusing to grant the defendant's motion for a new trial upon the first ground, which was as follows:

"'Upon the ground that the verdict is excessive,' the error being that the evidence shows that the plaintiff, if injured at all, was injured very slightly, and the verdict is far out of proportion to any injury or actual damages caused thereby, and it appears that the verdict includes both punitive and actual damages and for loss of commissions and profits."

*Messrs. F. B. Grier, Nicholls & Nicholls* and *Bomar & Osborne,* for appellant, cite: *Admission of evidence complained of here is not harmless error:* 19 L. R. A. 733. *Facts should be stated by nonexpert witness on which opinion is based:* 38 S. C. 212; 40 S. C. 330. *The agreement made between counsel as to taking depositions is binding:* 2 Rich. 269, 120. *The declarations of the conductor the next day were not admissible:* 13 S. C. 462; 27 S. C. 63; 53 S. C. 448; 68 S. C. 310; 19 L. R. A. 733; 30 L. Ed. U. S. 299; 17 S. C. 514; 19 S. C. 353; 5 S. C. 369; 4 S. C. 153; 62 S. C. 129. *A wreck may be one of the risks assumed by a passenger:* 87 S. C. 192. *Loss of commissions are not recoverable:* 13 Cyc. 49; 19 S. C. 223; 38 S. C. 284.

*Messrs. Johnson, Nash & Daniel,* contra, cite: *Admission of opinion as to speed not prejudicial:* 88 S. C. 80; 17 Cyc. 61; 16 L. R. A. 519; 70 S. C. 430. *If error it was cured by cross-examination:* 53 S. C. 246, 448; 48 S. C. 337; 70 S. C. 315; 78 S. C. 143. *Declarations of the conductor are binding on the carrier:* 31 L. R. A. (N. S.) 309. *Movement of cars is an instrumentality of the carrier:* 88 S. C. 91. *Promising to take the passengers on and not doing it renders the carrier liable in punitive damages:* 53 S. C. 210; 72 S. C. 450. *Issue of punitive damages was properly sent to the jury:* 69 S. C. 160; 65 S. C. 122; 76

S. C. 288; 64 S. C. 424; 62 S. C. 325; 65 S. C. 326. *Passenger does not assume dangers of a wreck:* 65 S. C. 447. *Speed of train may be negligence under some circumstances:* 65 S. C. 128; 2 Huch. on Car., sec. 926; White Per. Inj. on R. R., sec. 104.

August 1, 1912. The opinion of the Court was delivered by

MR. JUSTICE FRASER. This is an action for actual and punitive damages. The complaint alleges that the plaintiff is a commercial traveler, selling goods by sample on commission and in the discharge of his regular business was on March 3, 1909, at Fountain Inn, which was a town situated along the route between Greenville and Laurens, over which the defendant operates its train; that having paid his fare, plaintiff took passage at Fountain Inn on a mixed train to go to Laurens; that between Fountain Inn and Owens Station, a flag station, the train was wrecked because of a breakdown of a freight car which was a part of the train of cars; that by reason of the wreck thus caused, the plaintiff was injured in his person painfully and permanently.

5th. "That because of the said acts of the defendant this plaintiff was bruised and injured about the body and made sick, so that he was unable for many days to prosecute his regular or other business, and was caused to spend money for medical and other attention; all to his serious damage.

6th. "That defendant was careless, wanton, wilful and negligent in its conduct towards this plaintiff in the particulars hereinafter mentioned:

"(a) That defendant knowingly permitted an overloaded and defective freight car to be hauled along in said train at a high and dangerous rate of speed, the breaking of which freight car caused the wreck.

"(b) That after the wreck had occurred and plaintiff had been dragged in a rough and dangerous manner and injured, as above described, and had gotten out of the passenger car,

at the suggestion of defendant, he walked towards Owings Station, which was less than a mile ahead of the wreck, with the understanding with defendant that if the engine and certain box cars which were not thrown from the track pulled loose and came on towards Laurens, the said engine and box cars would be stopped in order to take plaintiff up and carry him to his destination; that it was promised by defendant that if the engine should overtake plaintiff before reaching said station, it would stop and take him up; that when within about one hundred yards of said station said engine, with two or more box cars, did overtake plaintiff, who signalled same to stop, but defendant paid no attention and failed and refused to take plaintiff on board and left him.

"(c) That plaintiff is informed and believes that said engine and box cars at that time went only to Gray Court, a mile or two below; but they soon came back to the place of the wreck, and upon its return from said place, going towards Laurens, plaintiff again signalled the train to stop at Owings Station in order that he might get aboard; but defendant failed and refused so to stop, and the train again left him twelve or fourteen miles from his destination; though plaintiff is informed and believes that said train did go through to Laurens and carried other passengers than himself; that it then being night, plaintiff was compelled to hire a conveyance and travel twelve or fourteen miles through the country to his destination on a very cold night, which might easily have been prevented if the defendant had discharged its duty towards this plaintiff.

7th. "That said conduct of defendant towards this plaintiff was wilful, high-handed and a reckless disregard of plaintiff's rights as defendant's passenger and much to his damage."

The defendant admits that plaintiff was a passenger and that there was a wreck, but denies that plaintiff was injured by reason of the wreck, and alleges that if plaintiff subse-

quently became sick, it was due to his own conduct and was not due to any agency or instrumentality of the defendant.

The jury found a verdict for the plaintiff for five hundred dollars.

There are fifteen exceptions (which will be reported), but the appellant groups them under nine heads.

1. The first group complains of error in the admission of the statements of witnesses, Mrs. DuBose and W. H. Hinds, over objection of defendant's counsel, in which they were permitted to testify that in their opinion the train was running fast and too fast without any facts upon which they based such opinions.

This testimony was more an estimate of speed than an opinion. The rate of speed was testified to by the plaintiff, the conductor, the engineer and the fireman. To allow the witness to state whether the train was running fast or too fast, is fully authorized by the rule laid down in *Jones* v. *Fuller,* 19 S. C., page 70, where the Court says: "While it is necessary that the witness should first state the facts upon which he bases his opinion, where the facts are such as are capable of being reproduced in language, it is not necessary to do so where the facts are *not* capable of reproduction in such a way as to bring before the minds of the jury the condition of things upon which the witness bases his opinion."

It is by no means clear from the record that the evidence objected to was not brought out by defendant's counsel. If it was, then defendant could not object to the testimony brought out by its own counsel. It is, however, stated in argument, that the record must be erroneous as an attorney of Mr. Cooper's ability would not have asked such a question. The presumption is very strong, as Mr. Cooper is a very able lawyer, but, however strong, it cannot be allowed to contradict the record. To allow it to do so would give to able and experienced counsel an advantage over their less able and experienced brethren

that the law does not allow. In the Courts at least "all men are equal." These exceptions are overruled.

2. Exceptions 4, 5 and 9 are combined.

These exceptions complain of error in allowing the testimony as to what the conductor said the next day.

The testimony tended to show that the conductor, who certainly was the agent of the company, was still engaged in the business of the wreck and went to the' plaintiff for the purpose of getting a statement from him as a part of his official duties in connection with the wreck.

An agent is rarely if ever commissioned expressly to make admissions of responsibilty, but it would be monstrous to hold that an agent to get admissions could make none. These exceptions are overruled.

3. The next exception, No. 6, complains that his Honor, the presiding Judge, erred in his modification of plaintiff's third request to charge, as follows: Where a passenger is on a railroad train and gets hurt and it is shown that he is hurt on the railroad train, then the presumption is that it was done through the negligence of the railroad company, in that his Honor omitted the important requirement that the evidence must show that the injury was caused by the agency or instrumentality of the company. The plaintiff's request contained the words "agency or instrumentality." This was a serious omission and would have entitled the defendant to a new trial if the defendant had not made a request to charge that embodied the same omission.

The sixth request to charge was as follows: "6. The fact, if it be a fact, that the plaintiff is in a railroad wreck, does not at all entitle him to a verdict. (By the Court: That is just simply from that fact, nothing else appearing.) *He must not only show that he was in a wrecked train,* but must go further and prove to your satisfaction by a preponderance of the evidence *that he was injured,* and *the extent of his injuries.* There is no presumption of law that a party

has been injured because he was in a wreck; that is a matter of proof, the burden being on the plaintiff in all cases to establish his injury and the extent of it."

In a wreck, as at other times, the injury must be through the agency or instrumentality of the defendant. When a party has asked the Court to charge an erroneous proposition of law, he cannot be heard to complain that the Court has followed him into error. This exception is overruled.

4. The tenth exception complains of error upon the part of the trial Court in charging the jury that a wreck is not one of the inconveniences which a passenger assumes and where it is shown that a passenger is injured *by that cause,* it is a natural and reasonable inference that the injury was the result of negligence inferred from the mere fact that the wreck occurred, in that this was a charge on the facts in violation of the Constitution. This exception is overruled.

It is true in a case of a wreck, as in all other cases, that where a passenger is injured by an agency or instrumentality of the company, the fact raises a presumption of negligence on the part of the company. There is no intimation here that any part of the wreck was not an instrumentality of the railroad company.

This exception is overruled.

5. The seventh exception complains of error in that his Honor charged as follows: "If an engineer wilfully or intentionally fails or refuses to see a passenger at a flag station, the passenger may recover punitive damages. Also if the conductor promises to hold the train and does not." The appellant admits in argument that while this as a general proposition may be correct, yet under the extraordinary condition of affairs, it was error. The extraordinary condition being the wreck. Appellant says it was the first duty of the train crew to have the obstruction removed and this they were bound to discharge and did discharge. This position is wholly unten-

able. The first duty of the train crew was to the passengers and this first duty they neglected absolutely, although one of the passengers was a lady, traveling alone in search of medical help, and it was known to the conductor by his own testimony.

This exception is overruled.

6. The eighth and thirteenth exceptions complain that there was no evidence upon which to base a verdict for punitive damages. These exceptions are overruled. There was evidence sufficient.

7. Exception 14 complains of error in not charging that plaintiff could not recover for loss of commissions. This was practically charged under defendant's twelfth request to charge, where his Honor charged the jury "that the plaintiff cannot recover any alleged pecuniary loss except such as he proved to you in dollars and cents; he cannot leave you to speculate and you cannot arrive at your verdict as to such items by speculation if he claims any such loss and has failed to give you evidence as to the items and amounts thereof or such facts as would enable the jury to ascertain same, you cannot include same in your verdict."

8. The twelfth exception complains of error in not charging without explanation the following: "There is no statute law in this State regulating the speed at which a train shall be run and the mere fast running of a train is not negligence *per se* and cannot be held to be wilful."

The Court said: "That is for the jury to say in each case, whether under the circumstances, whether a train running at a certain speed under certain circumstances, was negligent running or not. You are to be the judges of that particular case."

That explanation submitted to the jury only the question of negligence and eliminated wilfulness from any speed however great.

This exception is overruled.

9. The fifteenth exception complains of error in the refusal of a new trial upon the ground that the verdict was excessive.

This exception is overruled because this Court cannot consider the question of excessive verdicts.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE HYDRICK *concurs in the result.*

MR. JUSTICE WOODS. I agree that the judgment in this case should be affirmed, but I am unable to concur in all the reasoning of Mr. Justice Fraser.

The pleadings indicating the issues are set out in his opinion. The plaintiff having testified that the day after the wreck the conductor of the train came to him with a paper which he requested the plaintiff to sign, and that he refused to read or sign it, over the objection of the defendant, this question and answer were admitted.

"Where did Capt. Little tell you the next day that the train went that night? He said it went to Gray Court from Owens and the second trip it came from there to Laurens, carrying some live stock and negroes, leaving the white folks up in the woods. Now that is the way he did."

There was no evidence that the conductor was authorized to settle plaintiff's claim or even that he knew there was a claim. The alleged statement was made a day after the wreck, and, therefore, was not a part of the *res gestae.* Under such circumstances the testimony was clearly incompetent, unless all the authorities on the subject are to be overruled. *Petrie* v. *Columbia & Greenville R. R. Co.,* 27 S. C. 63; *Garrick* v. *Florida Central & Peninsular R. R. Co.,* 53 S. C. 448; *Mars* v. *Virginia Home Insurance Co.,* 17 S. C. 514; *Vicksburg & Meridian R. R. Co.* v. *O'Brien,* 119 U. S. 99, 30 L. Ed. 299. Author-

ity of an agent to ascertain merely the existence or nature of a claim implies no authority to adjust the claim or to make admissions binding on the principal. I think, however, that the error admitting this testimony should not work a reversal, because the conductor in his testimony, while denying that he made the statement attributed to him by the plaintiff, practically admitted and explained the acts embraced in the alleged statement. He testified that he did attach his engine and tender to a car at Gray's Court, on which there were some negroes and live stock, and did take the car into Laurens, leaving the passengers in the woods where the wreck occurred. This testimony was given by the conductor with the explanation that he was forbidden to carry passengers on an engine, and that he merely took up the box car on his way to Laurens to get a shanty car and return for his passengers. Under these circumstances the testimony of Nelson as to the conductor's statements to him, though incompetent, was harmless.

The sixth exception complains of error in the following instruction given in connection with plaintiff's third request: "I charge you that. Now, that means this, gentlemen of the jury, that where a passenger is on a railroad train and gets hurt, and it is shown that he is hurt on the railroad train, then the presumption is that it was done through the negligence of the railroad company, but when the railroad company shows that it was not through its negligence, but something that it couldn't help, not held under the law as being negligence, then that presumption of negligence gives way, done away with." This language must be taken in connection with the request itself, which had explicity limited the presumption of negligence from the fact of injury on a railroad train to injury received from an "agency or instrumentality of the railroad company." In view of this language of the request it cannot be assumed that the jury were so inattentive as not to understand that when the Circuit Judge in the same connection

spoke of a passenger getting hurt on a railroad train, he meant hurt by the railroad's agency or instrumentality.

The following instruction given at request of plaintiff, taken alone, stated the law against the defendant too broadly: "If an engineer wilfully or intentionally fail or refuse to see a passenger at a flag station, the passenger may recover punitive damages. Also if a conductor promises to hold the train and does not." Many emergencies may be imagined which would make it the imperative duty of a conductor not to stop for a passenger's signals at a flag station, or to disregard his promise to hold a train for a passenger, and if the instruction stood alone it would require a reversal. But in other portions of the charge the Circuit Judge gave the instruction with clearness and elaboration that all the conditions and emergencies were to be considered in deciding whether it was the duty of the conductor to take plaintiff up or to stop on his signals. Considering the entire charge on this subject, we do not think the jury could have been misled.